# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James H. Alesia | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 8192 | **DATE** | March 29, 2001 |
| **CASE TITLE** | | *Mary Lee Demick vs. City of Joliet* | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The court grants defendant's motion for summary judgment [14-1]. The court denies plaintiff's cross-motion for summary judgment [21-1]. Final judgment in this case is entered in favor of defendant the City of Joliet and against plaintiff Mary Lee Demick.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | MAR 3 0 2001 | 34 |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | CW | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| CW | courtroom deputy's initials | DOCKETING ... 29 ... 5: 07 | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MARY LEE DEMICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 99 C 8192 |
| | ) | |
| CITY OF JOLIET, | ) | Judge James H. Alesia |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are (1) defendant City of Joliet's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 and (2) plaintiff Mary Lee Demick's cross-motion for summary judgment on Counts III and V. For the reasons that follow, the court grants defendant's motion for summary judgment and denies plaintiff's cross-motion for summary judgment.

## I. BACKGROUND[1]

In 1997, plaintiff Mary Lee Demick ("Demick") applied for a firefighter position with defendant the City of Joliet ("the City"). After successfully completing the physical and written portions of the examination, Demick was notified in February of 1998 that the City placed her on its eligibility list; she was placed in rank order – fifteenth – on that list. That list was effective from February 19, 1998 until February 19, 1999 and was extended an additional year until February 19, 2000. On February 23, 1999, Demick turned thirty-five. On March 10, 1999, the

---

[1]Unless otherwise indicated, the following facts – taken from the parties' respective Local Rule 56.1 statements – are undisputed.

34

City removed Demick from its eligibility list because she exceeded the eligible age for appointment under the City's municipal rules.

Demick has filed a five-count complaint against the City. Count I is a claim for discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.* Count II is an equal protection claim under the Fourteenth Amendment. Count III is a claim for violation of plaintiff's due process rights, alleging that the removal of Demick's name from an eligibility list was a confiscation of her property rights. Count V is a claim for violation of the Illinois Municipal Code (the "Code"), alleging that the City's removal of Demick from the eligibility list violated certain sections of the Code.[2] This court has subject matter jurisdiction over the case pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1331.

In order to understand this court's opinion, one must be aware of a number of facts. For the sake of clarity, a recitation of these facts is in three parts. Part A discusses the relevant state and local ordinances and rules. Part B discusses the City's organization, practices and procedures. Part C discusses events which relate to Demick's claims.

A.   **State and Local Ordinances**

As a home rule unit, the City is empowered by the Illinois Constitution to regulate – through ordinances and local rules – for the protection of the public health, safety, morals and welfare. ILL. CONST. art. VII, § 6(a). "Home rule units may exercise and perform currently with

---

[2]Count IV was a claim for violation of the Age Discrimination Act. However, Demick voluntarily withdrew Count IV of her complaint. Accordingly, on March 14, 2000, the court dismissed Count IV of plaintiff's complaint. (*See* Ct. Order, dated Mar. 14, 2000).

the State any power or function of a home rule unit ...." *Id.* § 6(i). The City of Joliet's Fire and Police Board (the "Board") proposed Rules and Regulations governing appointments to the City's fire department which were subsequently adopted by the City in 1998. Specifically, the rules state that they "shall govern the original appointment and promotion of individuals to the classes of Firefighter...." (Def.'s 56.1 Statement, Ex. 1 at 2.) Under the title "Appointments" for firefighters, the rule states:

> No actual firefighting experience required; however, an applicant will not be *considered for appointment* unless he has reached his twenty-first (21st) birthday and has not reached his thirty-fifth (35th) birthday. ... All candidates must satisfactorily pass [several] examinations to become eligible for placement on the eligible register. ... In determining the eligible register only the final grade in the total of the weighted score for the written and oral examination shall be considered in arriving at the relative ranking on individuals on the eligible register.

(*Id.* at 3 (emphasis added).) The local rules go on to say that all original appointments shall be made "from the list of eligible candidates... ." (*Id.* at 5, ¶ 9.) With respect to lists of eligibility, the local rule states:

> The Board shall develop a list of eligible candidates based upon the combined scores of the written and oral examinations for each applicant. ... The listing of eligible candidates shall be in the order of the highest ranking score appearing first on the list and then proceeding in numerical order from the highest ranking score.

(*Id.* at 4, ¶ 5.) The Board, which is responsible for appointing new firefighters and police officers, was originally authorized to draft these rules in 1965, pursuant to Ordinance No. 4988. Those original rules were approved by the City Council in 1974 and subsequently adopted by the Board. When originally adopted, the Rules stated:

> No actual firefighting experience required; however, an applicant will not be considered for appointment unless he has reached his twenty-first (21st) birthday

3

and has not reached his thirty-fifth (35th) birthday. This age limitation does not apply in the case of any person having primary employment status as a fireman or policeman in a regularly constituted police or fire department of any municipality.

(Def.'s Rule 56.1 Statement, Ex. 13.) Although the rules have been amended by ordinance or resolution from time to time, it is clear that the current version of the rules contains the same provision regarding age restrictions as the original. However, this rule was not enforced from approximately 1992 until August of 1997 because such restrictions in age were preempted by the Age Discrimination in Employment Act ("ADEA") and the Illinois Human Rights Act ("IHRA").

The state of Illinois also has rules regarding the hiring of firefighters. The Illinois Municipal Code provides that "[a]ll applicants for a position in either fire or police department of the municipality shall be under 35 years of age ...." 65 ILL. COMP. STAT. 5/10-2.1-6(a). Further, with respect to register or eligibility lists, the Illinois Municipal Code states that "[i]f a person is placed on an eligibility list and becomes overage before he or she is appointed to a police or fire department, the person remains eligible for appointment until the list is abolished pursuant to authorized procedures." *Id.* at 5/10-1-12.

In 1998, when those preemptions were no longer enforced, the City Council ratified the Rules and Regulations of the Fire and Police Board by Ordinance No. 11802. On March 5, 1999, the City's corporation counsel drafted a memo regarding the changes in the law. In this memo, the counsel noted that there was an inconsistency between the state law regarding age restrictions and the City's ordinance. He further opined that the City's ordinance was controlling under its home rule powers. The City's corporation counsel stated that when he drafted Ordinance No.

4

11802 he was aware of a conflict between the City's ordinance and the state statute, a fact disputed by Demick but supported by the record. (Thanas Dep. at 20.)

**B.    The City's Organization and Procedures**

At the time that Ordinance No. 11802 was passed, Councilman Brophy stated in his deposition that he understood the City's Rules and Regulations to mean that if a person turned thirty-five while on the list, that person would be ineligible for appointment. (Brophy Dep. at 15-19.) Further, Brophy stated that he had no knowledge as to how the rule was applied in the past. Also, Councilman Giarrante – a retired Joliet firefighter who served as head of the firefighters' union from 1981 to 1995 – stated that his understanding of the rule was that a person could not be appointed after his or her thirty-fifth birthday. Moreover, Giarrante stated in his deposition that, during his term as union representative, he believed that a candidate who turned thirty-five would be ineligible even if the candidate was already on the eligibility list. (Giarrante Dep. at 15:5-14.)

Ed Breen ("Breen") is the current Secretary of the Board. At the time when the ADEA's preemptions became inapplicable, Breen became aware that municipalities could once again enforce age restriction through a flyer he received from the Illinois Fire and Police Board Association. On February 25, 1999, Breen sought a legal opinion from the City's corporation counsel regarding the interpretation of the City's rule. The City counsel responded on March 5, 1999, with a written opinion which stated that persons who were on the eligibility list but were over the age of thirty-five were not eligible for appointment. The March 5, 1999 opinion also advised Breen to send a letter notifying those persons on the list who had turned thirty-five that

they were no longer eligible for appointment. On March 10, 1999, Demick was notified by letter that she was no longer eligible for appointment. Further, three other male individuals on the eligibility list – Mark Houlihan, Sheldon Magee, and Thomas Kontos – were also notified that they were no longer eligible for appointment because they had turned thirty-five. Prior to authorizing the letter to Demick, Breen testified that he had never heard her discussed at any meeting of the Board. (Breen Dep. at 35:21 - 36:4.)

The City's legislative body – the City Council – meets twice a month. At the first meetings on Mondays, the Council holds "pre-council" meetings in which the agenda items on the following Tuesday meetings can be discussed in more detail, the Council members can ask questions and for clarifications, and the public can ask questions outside the presence of television cameras. These pre-council meetings are public and attended by all Council members. In addition, the Council occasionally holds special meetings to discuss large items, including the annual budget. The City's annual budget runs from January to January. By ordinance, the budget must be approved no later than March 31st. In February of 1999, the Council held two special meetings to discuss the 1999 budget – the second occurring on February 26, 1999. Then, on March 2, 1999, during its next regularly scheduled meeting, the Council approved the proposed budget. There is no reason for the approval date of March 2, 1999, except that that was when the Council members were available to participate in the special sessions. Demick has no evidence that the 1999 budget approval was delayed.

The 1999 budget accounted for $157 million in revenues and expenditures. Included in this was the Fire Department's Five Year Plan, which provided for a major restructuring in the

6

Fire Department. This Five Year Plan was conceived in response to a growth in the City's population and pressure within the Department to create additional positions. Further, it provided the Fire Chief an opportunity to present his long-term vision for the Department. The Plan, obviously, had significant financial impact on the City and, accordingly, was phased in over five years. Most new positions which were recommended by the Five Year Plan were put into the 1999 budget for approval. The City claims that those position could be filled only after the budget was approved. However, Demick contends that some positions were filled prior to budget approval. It appears that those positions in the police department, filled prior to the budget's approval, were specially approved by the Council because they were partially funded by grants. (Def.'s Reply to Pl.'s 56.1(a)(3) Statement, Exs. 16-17.) Thus, it appears that those positions filled were not part of the Five Year Plan. Moreover, although the need for additional firefighters was announced as early as December of 1998, there is no evidence that such positions were budgeted for before March 2, 1999.

## C.  Events Relating to Demick's Claims

In between the submittal and the March 2, 1999 approval of the budget, the Board began evaluating its eligibility list in order to fill the new positions. On March 5, 1999, the Board received a memo discussing the application of the age restriction on persons already on the eligibility list. On March 9, 1999 six persons were appointed from the eligibility list. On March 10, 1999, the Board sent a letter to Demick, Houlihan, Magee, and Kontos informing them that they had been removed from the eligibility list because their age precluded appointment.

Prior to those appointments made in March of 1999, the Board also appointed three persons to the position of firefighter in March of 1998.

No female has ever been appointed to the position of firefighter for the City. In fact, Demick was the first female ever to be placed on the Fire Department's eligibility list. The fact that she was placed on the list (in February of 1998) was common knowledge among City and Board officials. However, the City staff members affirmatively recruit females for the Fire Department. Although some of the fire stations do not have shower facilities for females, the three fire stations which have been built since 1992 are equipped with facilities for female firefighters. Further, a female intern firefighter worked twenty-four hour shifts without any problems.

When the list first came out in February of 1998, Fire Chief Drick, in his quarterly meetings with the department, acknowledged that there was a female – Demick – on the eligibility list. He then discussed issues concerning the workplace atmosphere and appropriate workplace behavior with a female on the staff. In essence, these meetings were sensitivity workshops for department personnel. (Drick Dep. at 15:5-23.) Following these meetings, some persons in the department asked questions about having a female firefighter and the changes in the workplace atmosphere. However, no one expressed a negative opinion about a female firefighter joining the department to Chief Drick.

At the time Demick was placed on the eligibility list, she was thirty-four years old. Demick turned thirty-five on February 23, 1999. However, prior to the budget being approved on March 2, 1999 – providing funding for six firefighter positions – there were no open positions.

When the Board appointed firefighters on March 9, 1999, Demick was thirty-five and no longer eligible. Thus, the City sent the letter dated March 10, 1999.

As stated above, the City's Rules and Regulations were not enforced from 1992 until August, 1997. Prior to that time, the City claims that it enforced those rules, refusing to appoint any person who was thirty-five years of age or older. However, in 1987, a man who turned thirty-five while on the eligibility list for the Police Department was appointed to the position of police officer. While Demick claims that two such persons were appointed, the second man in question was a police officer with another municipality and, therefore, was exempt from any age restrictions per the City's Rules and Regulations.

In its motion for summary judgment, the City argues that its local Rules and Regulations, as enacted by the Board and adopted by the City, exclusively govern the procedures for the hiring of city firefighters. Further, the City argues that its local rules preempt any state statute governing the hiring of firefighters – including the Illinois Municipal Code. Thus, the City contends that it is entitled to summary judgment as a matter of law on Count V of Demick's complaint. Second, the City argues that, because Demick has no property interest in remaining on the eligibility list under the City's local ordinance, it is entitled to judgment as a matter of law on Count III of Demick's complaint. In her cross-motion for summary judgment on Counts III and V, Demick argues that the Illinois Municipal Code is not preempted by the City's local rules and, therefore, she was entitled to remain on the eligibility list until its expiration. Finally, in its motion for summary judgment, the City argues that it is entitled to judgment as a matter of law

on Demick's Title VII and equal protections claims because Demick has failed to raise an inference of discrimination under either the direct or indirect methods.

## II. DISCUSSION

### A. Standard for Deciding a Motion for Summary Judgment

A motion for summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material facts exists for trial when, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir. 1995). In discrimination cases, this standard is applied "with added rigor ... where intent and credibility are crucial issues." *James v. Sheahan*, 137 F.3d 1003, 1006 (7th Cir. 1998) (quoting *Sample v. Aldi, Inc.*, 61 F.3d 544, 547 (7th Cir. 1995)). However, "self-serving assertions without factual support in the record will not defeat a motion for summary judgment." *Id.* (quoting *Jones v. Merchants Nat'l Bank & Trust Co.*, 42 F.3d 1054, 1058 (7th Cir. 1994)).

The burden is on the moving party to show that no genuine issues of material fact exists. *Anderson*, 477 U.S. at 256; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party presents a prima facie showing that it is entitled to judgment as a matter of law, the non-moving party may not rest upon mere allegations or denials in her pleadings, but must set forth specific facts showing that a genuine issue for trial exists. *Anderson*, 477 U.S. at 256-57;

*Celotex*, 477 U.S. at 324; *Schroeder v. Luftansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989).

## B.    <u>Count V – Violation of the Illinois Municipal Code</u>

In this case, the City contends that the Illinois Municipal Code, upon which Demick relies in Count V, is superseded and that it is entitled to judgment as a matter of law on that claim. Demick, on the other hand, argues that the City's ordinance does not conflict with the Illinois Municipal Code and, therefore, it is not superseded. More specifically, Demick argues that the section of the Illinois Municipal Code – which addresses the age limitation as applied to eligibility lists – is applicable because the City's ordinance does not address this issue and, therefore, has not enacted any conflicting rule. Both parties have moved for summary judgment on this issue.

The City is a home rule unit and, as such, "may enact ordinances pertaining to municipal employees which conflict with state statutes concerning the same matters." *Burgess v. Bd. of Fire & Police Comm'rs.*, 568 N.E.2d 430, 433 (Ill. App. Ct. 1991) (citing article 7 of the Illinois Constitution). More specifically, Illinois courts have held that the Illinois Constitution permits home rule units to adopt ordinances regulating police and fire personnel which differ from or conflict with state statutes. *Provenzano v. City of Des Plaines*, 629 N.E.2d 100, 101 (Ill. App. Ct. 1993). If a home rule's local ordinance conflicts with a state statute, the Illinois Supreme Court has held that the local ordinance supersedes the conflicting state statute. *Stryker v. Village of Oak Lawn*, 343 N.E.2d 919, 922 (Ill. 1976). However, under the Illinois Constitution, home rule units can exercise their powers concurrently with state statutes. ILL. CONST. art VII, § 6(i);

*see also McCann v. City of Chicago*, Nos. 89 C 2879 & 90 C 0464, 1991 WL 2537, *1 (N.D. Ill. Jan. 8, 1991). Thus, a local ordinance does not necessarily preempt a state statute – the two may rule concurrently.

The City of Joliet's Fire and Police Board proposed rules and regulations governing appointments to the City's fire department which were subsequently adopted by the City.[3] Specifically, the rules state that they "shall govern the original appointment and promotion of individuals to the classes of Firefighter...." (Def.'s 56.1 Statement, Ex. 1 at 2.) Under the title "Appointments" for firefighters, the rule states:

> No actual firefighting experience required; however, an applicant will not be *considered for appointment* unless he has reached his twenty-first (21st) birthday and has not reached his thirty-fifth (35th) birthday. ... All candidates must satisfactorily pass [several] examinations to become eligible for placement on the eligible register. ... In determining the eligible register only the final grade in the total of the weighted score for the written and oral examination shall be considered in arriving at the relative ranking on individuals on the eligible register.

(*Id.* at 3 (emphasis added).) The local rules go on to say that all original appointments shall be made "from the list of eligible candidates... ." (*Id.* at 5, ¶ 9.) Thus, taking the City's Rules and Regulations on their face, it appears that to be *considered for appointment*, a candidate must be on the eligibility list and under thirty-five. With respect to lists of eligibility, the local rule states:

> The Board shall develop a list of eligible candidates based upon the combined scores of the written and oral examinations for each applicant. ... The listing of eligible candidates shall be in the order of the highest ranking score appearing first on the list and then proceeding in numerical order from the highest ranking score.

(*Id.* at 4, ¶ 5.)

---

[3]It is generally accepted that, under home rule powers, a local government may enact ordinances governing the hiring and firing of police and fire personnel, including age limitations. *See Stryker*, 343 N.E.2d at 922; *Provenzano*, 629 N.E.2d at 101.

On the other hand, the Illinois Municipal Code provides that "[a]ll *applicants* for a position in either fire or police department of the municipality shall be under 35 years of age ...." 65 ILL. COMP. STAT. 5/10-2.1-6(a) (emphasis added). More important to the present claim, the Illinois Municipal Code also states that "[i]f a person is placed on an eligibility list and become overage before he or she is appointed to a police or fire department, the person remains eligible for appointment until the list is abolished pursuant to authorized procedures." *Id.* at 5/10-1-12.

Generally, the "[p]owers and functions of the home rule units shall be construed liberally." ILL. CONST. art. VII, § 6(m). However, when that local ordinance is silent to an issue addressed in the state statute, the local ordinance may not necessarily supersede the entire statute. *See Budka v. Bd. of Pub. Safety Comm'rs*, 458 N.E.2d 126, 129-30 (Ill. App. Ct. 1983). While conflicting statutes are superseded by local ordinances, the Illinois Constitution says that home rule units may exercise control *concurrently* with the state. ILL. CONST. art. VII, § 6(i). Further, Illinois courts have found that, when a local ordinance is not contradictory to a state statute and is, in fact, silent on an issue addressed by the state statute, then both regulations govern. *See Budka*, 458 N.E.2d at 129-31. Thus, a local ordinance and a state statute can co-exist.

Many home rule units – when adopting a local ordinance – include a "preemption" clause in the ordinance itself clearly stating the home rule's position on the applicability of a state statute. For example, in *Burgess v. Bd. of Fire & Police Comm'rs,* the city defendant had specifically enacted a preemption section of its code which said that it intended to preempt any state statute. *Burgess,* 568 N.E.2d at 433; *see also Budka*, 458 N.E.2d at 129-30 (local ordinance contained clause which specifically stated that the state statute applied unless directly contradicted

13

by local rule). In this case, the City ordinance – ratifying the Rules and Regulations concerning hiring in the fire department, including age restrictions – clearly states that the City passed that ordinance pursuant to its powers as a home rule unit, including "to the extent that this Ordinance or the procedure for its passage conflicts with Illinois law...". (Def.'s 56.1 Statement, Ex. 3.) Thus, the City's ordinance states that, by ratifying the Board's Rules and Regulations, it intended to preempt any *conflicting* state law.

Unlike the situation in *Burgess*, 568 N.E.2d at 433, the City's ordinance does not have a general preemption clause stating that it intended to superseded the Illinois Municipal Code in its entirety by the very act of adopting its own rules and regulations. Thus, based on the record, it appears that the City did not intend to completely preempt the Illinois Municipal Code when it passed its local ordinance. However, this does not end the court's inquiry. The court finds that the City's ordinance is clear in stating that it preempts any conflicting state statute. The key issue, therefore, is whether the City's Rules and Regulations regarding appointment of firefighters conflict with the Illinois Municipal Code.

In an earlier opinion addressing the City's motion to dismiss, this court said that the issue is whether the City's local rules run concurrently with the state's Illinois Municipal Code or whether its rules preempt the Code. *See Demick v. City of Joliet*, 108 F. Supp. 2d 1022 (N.D. Ill. 2000). However, because it was a motion to dismiss, the court had to accept as true that the two could run concurrently. Further, the court had to make all inferences in favor of the plaintiff and take as true those allegations which supported plaintiff's claim that the Illinois Municipal Code was applicable to her claim. Thus, the court found that it may have been possible for

Demick to state a claim upon which relief could be granted. Now, with cross-motions for summary judgement – in which both parties seek a determination on the applicability of the Illinois Municipal Code – the court need not take such allegations as true; there is an even playing field. The court must now look at the record and determine whether the Illinois Municipal Code applies or is preempted by the City's rules as a matter of law. Specifically, the court must determine whether the two statutes conflict.

The first canon of statutory construction is that, where the language of a statute is clear, the court must apply its plain meaning as written. *See Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992). Thus, the rules of statutory construction require the court to read statutory terms according to their plain and commonly accepted meaning. *Budka*, 458 N.E.2d at 130. Only if the statute or ordinance is silent or ambiguous with respect to the specific issue, the court must then determine whether the proposed interpretation of the statute or ordinance is reasonable. *Am. Soc'y of Cataract & Refractive Surgery v. Shalala*, 94 F. Supp. 2d 914, 924 (N.D. Ill. 2000) (citing *Regions Hosp. v. Shalala*, 522 U.S. 448 (1998)).

Thus, the court must start with the language of both the Illinois Municipal Code and the City's Rules and Regulations. First, the Illinois Municipal Code states that all *applicants* must be under thirty-five but that, once on the eligibility list, a person who is thirty-five can still be appointed. On the other hand, the City's Rules and Regulations governing appointments state in clear and unambiguous language that no one thirty-five or older shall be *appointed*. If the court were to allow the Illinois Municipal Code and the City's Rules and Regulations to co-exist, then – under the Illinois Municipal Code – a person over thirty-five could be appointed to the

15

position of firefighter from the eligibility list. This outcome clearly conflicts with the City's rule on appointments. And the City's ordinance – ratifying those rules governing appointment – clearly states that it preempts any conflicting state laws. Thus, as a matter of law, the City's Rules and Regulations supersede the state law. The Illinois Municipal Code, therefore, is inapplicable to Demick.

Demick contends that the City's rules were ratified so that they would be the same as they were prior to the ADEA and the IHRA's prohibition on age restrictions. Thus, she claims, because the rules prior to the ADEA and the IHRA's prohibitions did not apply the age restrictions to person on the eligibility lists, neither do the current rules. In support of that argument, Demick claims that the City appointed several police officers who were on the eligibility list but yet had turned thirty-five. The record shows that, in 1987, the City appointed one police officer from the eligibility list who was over thirty-five and not employed as an officer in another municipality (meaning he did not fall under the City's exception to the age-restriction rule). The City admits that this person was appointed but offers no explanation for the derivation from the rule it claims has been in effect since 1974. However, the defendant does contend that the *enforcement* of the rules does not control, it is the written rule itself that is important. The court agrees. Where the language of a statute is clear in its application, judicial inquiry is complete. *Connecticut Nat'l Bank*, 503 U.S. at 253; *see also Oberg v. Allied Van Lines*, 11 F.3d 374 (7th Cir. 1993). The City's Rules and Regulations are not ambiguous to the extent that they clearly prohibit any person thirty-five years of age or over from being appointed as a firefighter.[4]

---

[4]In further support, the City argues that the reason that its rules do not contain a specific
(continued...)

Because the court finds that the language is clear and unambiguous, its inquiry is complete and the court need not address the issue of legislative intent.

In sum, the court finds that the City's Rules and Regulations clearly and unambiguously prohibit the appointment of any person age of thirty-five or over. Thus, those Rules conflict with § 5/10-1-12 of the Illinois Municipal Code, which allows person thirty-five and older to remain eligible for appointment. Under its home rule powers, the City ordinance, ratifying the Rules and Regulations, preempts the Illinois Municipal Code to the extent that it conflicts with the local ordinance. Accordingly, the court finds that the City is entitled to summary judgment as a matter of law on Count V of Demick's complaint. The City's motion for summary judgment on Count V is granted; Demick's cross-motion for summary judgment on that same count is denied.

## C.     Count III – Procedural Due Process Violation

In Count III of her complaint, Demick claims that she was deprived of property interests without a hearing. Specifically, she claims that her right to procedural due process under the Fourteenth Amendment was violated when her name was removed from the eligibility list without a hearing or notice. In its motion for summary judgment, the City claims that Demick's claim must fail because she has no property interest in remaining on the eligibility list.

To establish a claim for deprivation of property without due process, a claimant must prove that she was deprived of a property right. *Pleva v. Norquist*, 36 F. Supp. 2d 839, 848 (E.D. Wis. 1999). In this context, "property" is defined as something which plaintiff is securely entitled

---

[4](...continued)
section refuting the section of the Illinois Municipal Code pertaining to age restrictions and the eligibility list is because that section of the Illinois Code did not exist when the City enacted its own rules in 1974.

to under state or local law. *Id.* (citing *Reed v. Village of Shorewood*, 704 F.2d 943, 948 (7th Cir. 1983)). To have a property interest which is protected by procedural due process, the Supreme Court has said that a person must have "a legitimate claim of entitlement to it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Under the Illinois Municipal Code, a person is entitled to remain on an eligibility list even if that person has reached the age of thirty-five. Thus, a person on an eligibility list would have, under the Illinois Municipal Code, a protected property interest in remaining on that list until the list's expiration. *See Stana v. School Dist. of Philadelphia*, 775 F.2d 122, 125-26 (3d Cir. 1985) (cited in *Dziewior v. City of Marengo*, 715 F. Supp. 1416, 1420 (N.D. Ill. 1989)).

However, the court has determined that, as a matter of law, the Illinois Municipal Code is preempted by the City's local ordinance. *See infra* Sect. II.B. Thus, Demick was not entitled to remain on the eligibility list, and therefore, she has not alleged a protected property interest. Accordingly, the court finds that the City is entitled to summary judgment as a matter of law on Count III of Demick's complaint. The City's motion for summary judgment on Count III of Demick's complaint is granted; Demick's cross-motion for summary judgment on that same count is denied.

## D.    Count I – Discrimination Claim Under Title VII

Title VII makes it unlawful for an employer to discriminate "against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion," or sex. 42 U.S.C. § 2000e-2(a)(1). Discrimination may be established in either of two ways – through direct evidence or through the indirect burden-shifting

method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See McCarthy v. Kemper Life Ins. Cos.*, 924 F.2d 683, 686 (7th Cir. 1991). Demick has not presented any direct evidence that her sex played a role in her being removed from the eligibility list and not being hired as a firefighter. However, in her response brief, although giving much service to the standard set forth in *McDonnell Douglas*, plaintiff does assert that she has adduced circumstantial evidence which could allow a rational fact-finder to conclude that the City intentionally discriminated against her because of her gender.

## 1. Circumstantial evidence under the direct method

Under the direct approach, the Seventh Circuit has held that a plaintiff can build "direct" evidence from a mosaic of circumstantial evidence which may show that employer's decision was motivated by an impermissible purpose. *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994); *see also Pafford v. Herman*, 148 F.3d 658, 665 (7th Cir. 1998). In *Troupe*, the court stated that are three types of circumstantial evidence upon which a plaintiff can rely in order to avoid the burden-shifting method: (1) evidence consisting of "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn"; (2) evidence, whether or not rigorously statistical, that similarly-situated employees who were not female received systematically better treatment; and (3) evidence that "the plaintiff was qualified for the job in question but passed over in favor of (or replaced by) a person not

having the forbidden characteristic and that the employer's stated reason for the difference in treatment is unworthy of belief, a mere pretext for discrimination." *Troupe*, 20 F.3d at 736.[5]

Circumstantial evidence, if sufficiently persuasive, may defeat a motion for summary judgment on a Title VII claim. *Troupe*, 20 F.3d at 736. Different kinds and combinations of evidence "none conclusive in itself" may together compose "a convincing mosaic of evidence" which may be enough to survive summary judgment. *Troupe*, 20 F.3d at 737. The "mosaic of evidence" under *Troupe* can consist of many different kinds of evidence. However, a plaintiff must allege enough of them to satisfy this factor. *Bickerstaff v. Nordstrom, Inc.*, 48 F. Supp. 2d

---

[5]Several courts have limited or criticized *Troupe*'s expansive definition of circumstantial evidence. *See Cowan v. Glenbrook Security Serv. Inc.*, 123 F.3d 438, 443-44 (7th Cir. 1997) (holding that direct evidence cannot rely on inference or presumption but must directly prove that an employer's actions were motivated by racial animus – although not citing *Troupe*); *Schaffner v. Rush Presbyterian St. Luke's Hosp.*, No. 94 C 2471, 1996 WL 507246, at *5 n.8 (N.D. Ill. Sept. 4, 1996) (finding that, because the definition of circumstantial evidence improperly incorporates the indirect method and because the court did not believe the Seventh Circuit intended to eliminate the indirect method under *McDonnell Douglas*, the third type of circumstantial evidence should be analyzed under the burden-shifting method). *See also Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1089 (7th Cir. 2000) (finding that whether "the evidence presented is characterized as 'indirect' evidence or 'mosaic' evidence, very often the best way to evaluate the plaintiff's case at the summary judgment stage is 'to use the *McDonnell Douglas* steps'..."); *Huff v. UARCO*, 122 F.3d 374, 380 (7th Cir. 1997) (holding that the standard of proving pretext is the same under *Troupe* and *McDonnell Douglas*); *Jones v. City of Elgin*, No. 96 C 6920, 1998 WL 259538, at *7-8 (N.D. Ill. May 13, 1998) (adopting the reasoning of *Schaffner* and analyzing plaintiff's evidence under *McDonnell Douglas*). This court agrees with the holdings in *Huff* and *Schaffner* that circumstantial evidence regarding the pretextual nature of an employer's reasoning is more appropriately analyzed under *McDonnell Douglas*. Further, this court also notes that the idea of using circumstantial evidence – which by its very nature requires a finder-of-fact to make inferences and presumptions – to directly establish discrimination seems oxymoronic. However, other recent Seventh Circuit cases have upheld *Troupe* and applied that standard. *See Bell v. EPA*, 232 F.3d 546, 553-54 (7th Cir. 2000) (applying the *Troupe* standard and considering circumstantial evidence); *Council 31, Am. Fed'n of State, County & Mun. Employees v. Doherty*, 169 F.3d 1068, 1072-73 (7th Cir. 1999); *Pafford v. Herman*, 148 F.3d 658, 665 (7th Cir. 1998). Thus, despite the inconsistencies and confusion among the courts, this court must accept the standard set forth in *Troupe* as good law.

790, 797 (N.D. Ill. 1999). Suspicious timing, for example, refers to instances where an employee is discharged or passed over not long after her membership in a protected group became an issue. *Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1034 (7th Cir. 1999). Further, ambiguous statements, for purposes of showing discrimination by circumstantial evidence, refer to "isolated comments" supporting an inference of discrimination which were made *contemporaneously* with the adverse employment decision. *Marshall v. Am. Hosp. Ass'n*, 157 F.3d 520, 526 (7th Cir. 1998) (emphasis added).

Under the first *Troupe* category, Demick may present sufficient evidence of (1) suspicious timing; (2) ambiguous oral or written statements; (3) behavior toward or comments directed at other women; and/or (4) other "bits and pieces" from which an inference might be drawn. Demick contends that she has presented the following evidence as proof of discrimination: (1) a change in interpretation of the City's age restriction; (2) the delay in seeking budget approval for six firefighter positions in 1999 despite having a need for such positions in December of 1998 when police positions were filled without such budget approval; and (3) the suspicious timing surrounding the decision to remove Demick from the eligibility list and the Board seeking advice regarding overage candidates, despite the fact that there were four overage candidates already on the list, soon after Demick's birthday. Specifically, Demick asserts that the timing of the City's change in policy interpretation and budget approval and the Board's inquiry into the application of the age restriction to eligibility lists are all suspiciously close to her birthday, and that the budget was delayed so that the City would have an excuse to remove her from the list. Further, in the background section of her response brief, Demick also alleges that meetings were held

regarding the appointment of female firefighters and that many people in the Fire Department expressed concern regarding the appointment of a woman.

Demick is basically relying on "suspicious timing" to create a mosaic of circumstantial evidence, seeing as all the above evidence becomes important with respect to the timing of these changes or occurrences and Demick's birthday. However, "timing alone does not create an inference of discrimination." *Marshall*, 157 F.3d at 526 (citing *Hunt-Golliday v. Metro. Water*, 104 F.3d 1004, 1011 (7th Cir. 1997)); *see also Piraino v. Int'l Orientation Resources, Inc.*, 137 F.3d 987, 991 (7th Cir. 1998) (holding that timing alone is insufficient). "Speculation based on suspicious timing alone, however, does not support a reasonable inference" of discrimination. *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000) (citing *Stagman v. Ryan*, 176 F.3d 986, 1001 (7th Cir. 1999)). "The mere fact that one event preceded another does nothing to prove that the first event caused the second." *Id.* Demick must show that other circumstances are present which reasonably suggest that the two events are somehow related to each other. *Id.* Specifically, Demick must show some type of connection between the City's actions (her being removed from the eligibility list) and her gender. *Marshall*, 157 F.3d at 526; *see also Cowan*, 123 F.3d at 444.

First, with respect to the allegation that the City changed its interpretation of the age restriction around the same time as Demick's birthday, Demick has presented no evidence that this change in interpretation was connected to her gender. In fact, there is no evidence that the City's interpretation of its Rules and Regulations changed at all. It is undisputed that some councilmen believed, when voting to ratify the Board's Rules and Regulations, that the age

restriction applied to persons on the eligibility list. Although Breen, the Secretary of the Board, stated he believed that the restriction did not apply to persons on the eligibility list, that was only his opinion. He actually inquired into the matter and was told that the City's Rules and Regulations preempted the state statute and, consequently, the age restrictions applied to persons on the list. Although Demick claims that the Rules and Regulations were not applied at least once since 1974, the City has said that was a mistake. There is no evidence that the City or the Board had previously *interpreted* its Rules and Regulations to mean anything other than what was stated in the corporation counsel's memo.

Second, with respect to the allegation that the City delayed in approving the budget until after Demick's birthday, Demick has presented no evidence that supports this allegation. There is no evidence that the budget was prepared well before it was presented to the Council and that its passage was delayed because a woman was nearing appointment. On the contrary, the City has presented evidence that, from 1984 until 1999, the budget was passed as early as December 6th of the preceding year and as late as March 31st of that year. In fact, the 1992 budget was not passed until March 30, 1992; the 1993 budget was not passed until March 29, 1993; and the 1986 budget was not passed until March 31, 1986. (Def.'s 56.1 Statement, Ex. 10.) In fact, it is undisputed that the City had until March 31, 1999 to approve the 1999 budget. Thus, there is no evidence that the City intentionally delayed the passage of the budget until after Demick's birthday. Demick's speculation regarding the "suspicious" timing is not enough to support a reasonable inference of discrimination. *See Sauzek*, 202 F.3d at 918.

Further, Demick offers no evidence – apart from the date of her birthday and the date of budget approval – that there is any connection between the date of the passage of the budget and her gender. Again, suspicious timing generally refers to when an employment action – here Demick's removal from the eligibility list – is made not long after her membership in a protected group becomes an issue. It is undisputed that the Board and members of the City Council knew that Demick – a female – was placed on the eligibility list in February, 1998. In fact, her placement was discussed at Fire Department meetings in March of 1998. However, the budget was approved in March of 1999, and Demick was removed from the list March 10, 1999. This interval, by itself, is too long to support an inference of discriminatory intent on the part of the City. *See Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1010 (7th Cir. 2000). There is no evidence that Demick's gender was an issue in removing her from the eligibility list, let alone that it played a role in the passage of the budget. In this case, the timing of her removal relates to Demick's age, not her gender.

The budget was approved on March 2, 1999, although it is undisputed that the City ordinance gives the Council until March 31st to approve that year's budget. (Def.'s 56.1 Statement, ¶ 46.) It is also undisputed that Demick has no evidence that anyone intentionally delayed the 1999 budget in order to ensure her thirty-fifth birthday would pass. (*Id.* ¶ 63.) Further, although it is undisputed that the City anticipated hiring six new firefighters in as early as December of 1998 (Pl.'s Statement of Add'l Facts, ¶ 53), the record shows that the Board is unable to appoint new firefighters without budget approval from the City Council. Demick does point to the fact that certain police positions were filled prior to budget approval. However, the

record shows that those positions were specially approved by the Council because they were partially funded through grants to the police department. (Def.'s Reply to Pl.'s 56.1(a)(3) Statement ¶ 49, Ex. 17.)

Next, with respect to the timing of the Fire Board's inquiry regarding the age restriction, Demick has not offered any evidence that this inquiry was based upon her gender. In fact, there are not even any ambiguous statements regarding her gender in the letter requesting an explanation on the rules. On the contrary, the City contends that the inquiry was based upon age – meaning the City was faced, for the first time, with a situation in which it was likely going to reach a candidate on the eligibility list who had turned thirty-five. The fact that the Board's inquiry preceded removing Demick from the list does not prove that she was removed because of her gender. *See Sauzek*, 202 F.3d at 918 (stating that plaintiff must show a connection between the events and her membership in a protected class).

Further, while Demick alleges that the Fire Department held meetings regarding the hiring of female firefighters, the record shows that these meetings were held as sensitivity workshops. The court cannot see penalizing an entity which takes measures to prevent sexual harassment. Although these meetings did relate to the female gender, the court will not use such meetings against an employer to show discriminatory intent. Further, the record shows that several male firefighters asked commonplace questions about having females among their ranks.[6] However, for any ambiguous statements to be used as evidence of discriminatory intent, they must be made

---

[6]While the record says "daily" questions, a reading of the transcript shows that the "daily" was meant as "commonplace" and did not reference frequency. (Drick Dep. at 14-15.)

contemporaneously with the employment decision. *Bickerstaff*, 48 F. Supp. 2d at 797 (citing *Marshall*, 157 F.3d at 526).

Finally, Demick claims that it is suspicious that three men on the list who were over thirty-five remained on the list after their respective birthdays, but were removed only after Demick turned thirty-five. However, the City has contended that they were never in a position to reach any of those individuals for appointment from the list. In fact, the record shows that in March of 1998, when three positions were filled, the Board only went down to number seven on the list; Houlihan was the only person over thirty-five at that time, and he was forty-third on the list. When the next appointments were made, in March of 1999, the Board knew that they would likely reach Demick's name because, starting with number eight on the list, the Board would be considering candidates for six positions; that time the Board went as far down on the list as number twenty-two (Demick was number fifteen). Still, Houlihan, Magee and Kontos were never reached for consideration. However, they, along with Demick, were removed from the list at the same time. Thus, based on this evidence, Demick cannot show that there is a connection between her removal from the list and her gender, seeing as males were also removed. In fact, this evidence cannot reasonably raise an inference of discriminatory intent. In sum, the above circumstantial evidence cannot – even taken together – raise a reasonable inference that Demick's gender was connected to any of the actions taken by the Board or the City Council.

Under the second *Troupe* category, Demick must prove by some quality of statistical evidence that other men received systematically better treatment. Demick alleges that men who turned thirty-five while on the eligibility list remained on that list while she was removed. This

assertion is not supported by the record. It is true that Houlihan and Magee turned thirty-five while on the list and remained on the list for a period of several months, but they were eventually removed before their names ever were considered for appointment. In fact, only Houlihan was thirty-five and on the list when appointments were made in March of 1998; he was forty-third on the list, and the Board only went down as far as number seven. The Board did not make any other appointments until March of 1999. It was at that time that they reached Demick's name. Demick was thirty-five at that time which, the City claims, is why they inquired about the age restriction. It was also at that time that all persons age thirty-five and over were removed from the eligibility list. Thus, while some men may have remained on the list for a period of time, all were removed at the same time. Further, Kontos turned thirty-five only a few days before Demick; he clearly did not receive any different, let alone better, treatment. Moreover, no men over thirty-five were considered for appointments as firefighters. Thus, there is no evidence that men were treated systematically better than women.

In sum, Demick has not presented sufficient circumstantial evidence which would allow a fact-finder to reasonably infer that the City's actions were motivated by discriminatory intent. Thus, Demick has failed to prove her discrimination claim under the direct method.

### 2. Burden-shifting method

Under *McDonnell Douglas*, the plaintiff must first establish, by a preponderance of the evidence, a prima facie case of employment discrimination. 411 U.S. at 802. To establish a prima facie case, Demick must show: (1) that she belongs to a protected group; (2) that she was qualified for an open position; (3) that her employer subjected her to an adverse employment

action; and (4) that similarly-situated employees outside her classification received more favorable treatment. *Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 454 (7th Cir. 1999). If Demick establishes a prima facie case, then the burden shifts to the City "to articulate a legitimate, nondiscriminatory reason for its allegedly biased employment decision." *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). If the City meets its burden, then the burden shifts back to Demick to establish, by a preponderance of the evidence, that the City's stated reason is nothing more than pretext. *Id.*

### a.     The prima facie case

To raise an inference of discrimination, "the fundamental requirement is that a Title VII plaintiff 'must show that as a female she was treated differently than a similarly situated male.'" *Cherry v. AT&T Co.*, 47 F.3d 225, 228 (7th Cir. 1995) (quoting *Chambers v. Am. Trans. Air, Inc.*, 17 F.3d 998, 1003-04 (7th Cir. 1994)). Further, it is the plaintiff who bears the burden of proving, by a preponderance of the evidence, that she has established her prima facie case. *Cherry*, 47 F.3d at 228. In the present case, neither side specifically addresses the issue of whether Demick has established a prima facie case. However, it is clear from the record that Demick has satisfied the first and third elements – that she is a member of a protected class and that she suffered an adverse employment action. However, the court must determine whether Demick has satisfied the remaining two elements.

The City argues that there were no vacant positions for Demick to fill prior to her turning thirty-five. Indeed, it seems that Demick's name was not reached in the time she was on the list. The rules require that appointments be made starting with the top person on the list and working

down that list. In March of 1998, three positions became available, and, consequently, three applicants were appointed. However, the department did not go below number seven on the list (while Demick was number fifteen). The next round of appointments was not made until March of 1999. Demick turned thirty-five on February 23, 1999, and, consequently, was ineligible for appointment. Therefore, Demick was not qualified for any position filled in March of 1999. However, Demick claims that she should have been appointed earlier – in December of 1998 – when the need for the positions was determined. At that time, Demick was thirty-four and still qualified for appointment. Thus, the court will assume that Demick met the job qualifications.

Next, Demick must show that similarly-situated males were treated more favorably. In order to determine whether Demick has shown she was treated less-favorably than similarly-situated males, the court must look at what is the essence of Demick's claim. *See Allen v. Muriello*, 217 F.3d 517, 520 (7th Cir. 2000) (holding that differing treatment between a white applicant and plaintiff regarding a fingerprint test was not relevant as it did not go to the essence of plaintiff's claim which was that he was required to submit proof of his eligibility). In this case, Demick bases her Title VII claim on the City's refusal to appoint her to the position of firefighter. Thus, while being on the eligibility list is connected to that claim, it does not go to the heart of Demick's complaint.

Demick offers evidence of three similarly-situated males – Houlihan, Magee, and Kontos. These three men all turned thirty-five while on the eligibility list. In this case, Houlihan, Magee, Kontos and Demick each received an identical letter informing each recipient that he or she was no longer eligible for appointment because he or she had turned thirty-five and, consequently, was

being removed from the eligibility list. The letter was sent to all four candidates on March 10, 1999. The only difference lies in the time period in which the candidate received the letter. In Houlihan's case, he turned thirty-five in August of 1997; Magee turned thirty-five in September of 1998; and Kontos turned thirty-five on February 14, 1999. Demick, although not specifically addressing the fourth prong of her prima facie case, does argue that these men were allowed to remain on the eligibility list once turning thirty-five while she was removed almost immediately after her birthday.

It is undisputed that Houlihan remained on the list for over a year and a half, and that Magee remained on the list for nearly six months. However, Kontos was removed less than a month following his birthday; Demick was removed approximately three weeks following her birthday. The difference in time between Kontos's and Demick's removal is minuscule and, therefore, makes them similarly situated. It is clear that Kontos and Demick were treated no differently in that they were both removed from the eligibility list within weeks of turning thirty-five. However, while remaining on the list is important to Demick's claim, it is not the essence of her discrimination claim. Demick's claim in Count I is based upon the fact that she was not given a position as a firefighter. None of the above mentioned men were offered positions as firefighters. In fact, these men were all removed from the eligibility list – precluding them from ever being appointed. Remaining on the list for months did nothing to help these men achieve appointment; it only prolonged the inevitable. None of the three men was considered for appointment or appointed. Thus, Demick has not shown that they were treated more favorably.

Further, the City argues that the reason these men were not removed prior to March 10, 1999 is because the City had not reached their names on the list before then. Demick has not cited to any evidence which shows that those other men were allowed to remain on the list despite the City reaching their names for appointment (which could allow an inference that they were still eligible for appointment, giving them a value in remaining on the list). Again, the court finds that the record does not support any evidence that similarly-situated males were treated more favorably.

Even if Demick, like Houlihan and Magee, had been allowed to remain on the eligibility list for over a year and a half, she still would not have been eligible for appointment under the City's Rules and Regulations. Thus, whether she stayed on the list or was removed shortly after turning thirty-five does not seem relevant. It seems that Demick's ultimate goal was not to remain on a list, but to be appointed to the position of firefighter. Given that the goal was to be appointed, the court finds that to prove similarly-situated males were treated more favorably, Demick would have to produce evidence that males over thirty-five were routinely appointed from the eligibility list.

Demick does claim that, in 1987, a police officer was appointed from the eligibility list despite the fact that he had turned thirty-five. The City does not dispute this one appointment was made but claims that it was a mistake which was made over thirteen years ago. The court finds that this one instance – which occurred over thirteen years ago – is not sufficient to allow a reasonable jury to find that similarly-situated males were treated more favorably. *See Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein*, 96 F. Supp. 2d 763, 769 (N.D. Ill. 2000)

(finding that a single instance of discriminatory treatment by the defendant which occurred nine years prior to plaintiff's claim is insufficient to show that similarly-situated males received better treatment); *see also Purze v. Village of Winthrop Harbor*, No. 99 C 8481, 2000 WL 1741895, at *2 (N.D. Ill. Nov. 22, 2000). Thus, the court finds that Demick has not shown that similarly-situated males were treated more favorably. Accordingly, the court finds that Demick cannot satisfy her prima facie case of discrimination.

### b.     Legitimate, nondiscriminatory reason

Furthermore, even if Demick had established her prima facie case, the City has established a legitimate, nondiscriminatory reason for refusing to appoint her to the position of firefighter. The City contends that Demick was not appointed because of her age. Specifically, the City argues that its Rules and Regulations prohibit the appointment of any person over the age of thirty-five to the position of firefighter. Such restrictions are allowable under the ADEA as well as the IHRA. Thus, the City has offered a legitimate, nondiscriminatory reason for removing Demick from the eligibility list and, consequently, not giving her a firefighter position.

### c.     Pretext

Because the City established a legitimate, nondiscriminatory reason for its decision, Demick must now show that the proffered reason is pretextual. In order to do so, Demick must "*specifically* refute the facts which allegedly support the employer's proffered reasons." *Mills v. First Fed. Sav. & Loan Ass'n*, 83 F.3d 833, 845 (7th Cir. 1996) (citations omitted) (emphasis in original). There are three ways to show that the proffered nondiscriminatory reason is pretextual: (1) the employer's explanation has no basis in fact; (2) the explanation is not the

"real" reason; or (3) the explanation is insufficient to warrant the adverse employment action. *Id.*

In this case, Demick asserts that the City's reason was pretextual. Given the evidence concerning the City's Rules and Regulations on age restriction, the City's reason is both supported in fact and warrants removal from the eligibility list and precludes appointment. Thus, Demick must show that the age restriction is not the "real" reason she was not appointed to the position of firefighter. In support of this contention, Demick asserts the same evidence which she claimed made up a mosaic of circumstantial evidence under the direct method. *See infra* Sect. II.D.1. However, Demick does not *specifically* refute the reason for her not being appointed firefighter. On the contrary, Demick seems to be basing her argument on her contention that she should have been appointed *before* she turned thirty-five. This does nothing to show that the City lied about its reason for not appointing her. In the alternative, Demick argues that the City never enforced the age restriction on applicants on the eligibility list prior to her name being up for appointment. However, apart from the testimony of Breen who states that he *thought* an applicant could remain on the list once turning thirty-five, Demick offers no evidence of how the policy was actually enforced. The evidence before this court is the City's Rules and Regulations. And those rules clearly state that no one shall be appointed once he or she is thirty-five or over. Further, the City's attorney wrote a memo stating that the City's rules precluded an applicant from appointment, regardless of whether that person was on the eligibility list, if he or she was thirty-five or over.

The only other evidence Demick asserts is that of the suspicious timing regarding the Board's inquiry concerning the age restriction and the budget approval by the City. As found above, there is no evidence that the budget was delayed except for plaintiff's own, unsupported assertions. Second, based upon the record, the timing of the Board's inquiry was related to the age of the candidates coming up for consideration, not Demick's gender. Demick has presented no evidence that specifically refutes the City's reason for removing her from the list or shows that this was not the real reason. Thus, Demick has failed to show that the City's proffered reason is mere pretext.

In sum, Demick has not established a prima facie case of discrimination for her Title VII claim. However, even if she was able to establish her prima facie case, Demick has failed to show that the City's proffered, nondiscriminatory reason for not offering her a firefighter position was pretextual or a lie. Thus, Demick has failed to satisfy her burden for establishing a sex discrimination claim. Accordingly, the court finds that the City is entitled to summary judgment in its favor on Count I of Demick's complaint.

**E.      Count II – Equal Protection Claim**

In order to establish a prima facie violation of the equal protection clause based upon gender discrimination, Demick must demonstrate that (1) she is a member of protected class; (2) she is similarly situated to members of the unprotected class; and (3) she was treated differently from members of the unprotected class. *Johnson v. City of Fort Wayne*, 91 F.3d 922, 944-45 (7th Cir. 1996). Demick must also prove that the City acted with discriminatory intent. *Id.* If plaintiff meets this burden, then the City may articulate a legitimate non-discriminatory reason for the

action. *Sims v. Mulcahy*, 902 F.2d 524, 538-39 (7th Cir. 1990). Thus, an equal protection claim is analyzed the same as a Title VII claim under the burden-shifting method. *Riordan v. Kempiners*, 831 F.2d 690, 695-96 (7th Cir. 1987) (holding that the same methods of proof are utilized in Title VII and equal protection cases).

Because the court has already found that the City is entitled to summary judgment in its favor on Demick's Title VII claim, the court also finds that Demick cannot satisfy the evidentiary burden for her equal protection claim. Accordingly, the court finds that the City is entitled to summary judgment in its favor on Count II of Demick's complaint.

## III. CONCLUSION

For the foregoing reasons, the court grants defendant's motion for summary judgment on all counts and denies plaintiff's cross-motion for summary judgment on Counts III and V. Final judgment is entered in this case in favor of defendant the City of Joliet and against plaintiff Mary Lee Demick.

MAR 2 9 2001

_____
Date

_____
James H. Alesia
United States District Judge

35